The document below is hereby signed.

Signed: February 10, 2020



*S. Martin Teel Jr.*

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DWAIN W. TATE, | ) | Case No. 19-00237 |
| | ) | |
| Debtor. | ) | (Chapter 13) |
| | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| DWAIN W. TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 19-10009 |
| FAIRFAX VILLAGE I | ) | |
| CONDOMINIUM, *et. al.*, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM DECISION AND ORDER RE MOTIONS FOR SUMMARY JUDGMENT

The plaintiff in this adversary proceeding, Dwain W. Tate

("Tate"), the debtor in the main bankruptcy case, has filed a

second amended complaint seeking (1) declaratory relief voiding a

foreclosure sale of property located at 3939 Pennsylvania Ave.,

SE, Unit 201, Washington, DC 20020 (the "Property") ("Count I")

and (2) damages pursuant to 11 U.S.C. § 362(k)(1) for the

defendants' having willfully violated the automatic stay ("Count

II").  The defendants have now filed a *Motion for Summary*

*Judgment* (Dkt. No. 36), which Tate has opposed in an opposition
(Dkt. No. 37) which includes a motion for summary judgment (which
amounts to a motion for partial summary judgment) decreeing that
the defendants willfully violated the automatic stay, with
damages to be fixed later.  I will grant the defendants' motion
as to Count I, but will deny it as to Count II.  As to Count II,
I will grant Tate partial summary judgment decreeing that, within
the meaning of 11 U.S.C. § 362(k)(1), the defendants "willfully"
violated the automatic stay.

I

FACTUAL BACKGROUND

Tate is the son of Annetta M. Tate ("Ms. Tate"), who owned
the Property until her death.  After his mother passed away
intestate, Tate, the heir to the Property, continued to make the
monthly payments on the mortgage and condominium fees, but Ms.
Tate remained the "named owner" according to the deed on file
with the Recorder of Deeds and the Office of Tax and Revenue tax
records.  Tate eventually fell delinquent on the payment of the
condominium fees, and the condominium association, Fairfax
Village Condominium I ("Fairfax Village"), a defendant herein,
filed and served a Notice of Foreclosure regarding the Property.
The foreclosure sale was set for April 11, 2019.  After Tate
filed his bankruptcy petition on April 10, 2019, his counsel
informed Brian Fellner, who is counsel for Fairfax Village and

2

individually a defendant herein, of the filing of the bankruptcy
and of Tate's interest in the Property as Ms. Tate's heir.
Despite this notice, the foreclosure sale proceeded on April 11,
2019.  On April 14, 2019, Tate commenced this adversary
proceeding, and on April 19, 2019, Tate filed an amended
complaint (Dkt. No. 7) seeking declaratory relief voiding the
foreclosure sale and damages for violation of the automatic stay.

Upon consideration of the defendants' *Motion to
Dismiss* (Dkt. No. 19) regarding Tate's amended complaint, the
court issued its *Memorandum Decision And Order Re Motion To
Dismiss And Directing Plaintiff To Provide A More Definite
Statement* (Dkt. No. 28) ("*Memorandum Decision And Order*").  In
that *Memorandum Decision And Order*, the court ruled that if Tate
had a prepetition equitable interest in the Property arising from
his status as Ms. Tate's heir, that such an interest would be a
valid basis for the relief sought in the amended complaint, and
directed Tate to provide a more definite statement of the basis
for such an equitable interest.  Thereafter, Tate filed a second
amended complaint (Dkt. No. 32) complying with the court's
*Memorandum Decision And Order.*  In response, the defendants filed
an answer (Dkt. No. 34) to the second amended complaint in which
they conceded, based on the court's *Memorandum Decision And
Order,* that the debtor had an equitable interest in the Property
and agreed to unwind the foreclosure sale.  Subsequently, on

3

August 6, 2019, the defendants filed the present *Motion for
Summary Judgment*, and on August 13, 2019, Tate filed his
opposition which included a motion that summary judgment be
entered in his favor as to the issue of whether there was a
willful violation of the automatic stay.

                              II

                           OVERVIEW

     Fed. R. Civ. P. 56(a), made applicable in this court under
Fed. R. Bankr. P. 7056, provides that "[t]he court shall grant
summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  When evaluating a motion for
summary judgment, "[t]he court need consider only the cited
materials, but it may consider other materials in the record."
Fed. R. Civ. P. 56(c)(3).

     The defendants' *Motion for Summary Judgment* argues (1) that
Tate's request for declaratory judgment is moot in light of the
defendants' having unwound the foreclosure sale, and (2) Tate is
not entitled to attorney's fees arising from the defendants'
violation of the automatic stay, either because the violation of
the automatic stay was not willful, or because Tate failed to
mitigate his damages.  As set forth below, because there is no
genuine dispute as to any material fact regarding Count I, the
defendants are entitled to summary judgement in their favor as a

                              4

matter of law.  As to the question of willfulness under Count II,
the material facts are not in genuine dispute, and on those facts
the law requires a finding that the defendants' conduct
constituted, within the meaning of § 362(k)(1), a willful
violation of the automatic stay, such that they are not entitled
to summary judgment in that regard and that Tate is entitled to
partial summary judgment in that regard.  Finally, as to the
question of mitigation of damages, there are material disputes of
fact as to whether any conduct of Tate or his counsel was
inconsistent with the duty to mitigate damages, and summary
judgment based on this is therefore inappropriate as to Count II.
I will now address each of these issues in detail.

II

TATE'S REQUEST FOR DECLARATORY RELIEF

The defendants request summary judgment in their favor as to
Tate's request for a declaratory judgment because, in response to
the court's *Memorandum Decision and Order*, "the foreclosure sale
has already been canceled, the deposit refunded to the highest
bidder, and a cancelation [sic] filed with the Recorder of
Deeds," thus rendering such relief moot.  Tate does not dispute
that the defendants have rescinded the foreclosure sale, or
present any argument as to why the defendants' undoing the
foreclosure does not render Count I of the second amended
complaint moot.  There is no reason not to treat the reversal of

the foreclosure as mooting the request for declaratory relief.
*See Galope v. Deutsche Bank Nat. Trust Co.*, 566 Fed. Appx. 552,
553 (9th Cir. 2014) ("rescission of the [foreclosure] sale ...
mooted [debtor's] claims for injunctive and declaratory
relief").[1]  Accordingly, the defendants are entitled to summary
judgment as to Count I.

### III

### TATE'S REQUEST FOR DAMAGES

The defendants seek summary judgment in their favor as to
Tate's Count II requesting that the court find that the
defendants willfully violated the automatic stay and that Tate is
entitled to damages.  The defendants contend that summary
judgment is appropriate for two reasons.  First, they argue that
the applicable state law basis for Tate's interest in the
Property was too ambiguous to render their violation of the
automatic stay "willful."  I conclude that the law was not

---

[1]  It is true that "so long as the plaintiff has a cause of
action for damages, a defendant's change in conduct will not moot
the case," *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of
Health*, 532 U.S. 598, 608-09 (2001), and that this principle
applies even where a plaintiff has sought declaratory or
injunctive relief.  *See Libbey v. Village of Atlantic Beach*, 982
F. Supp. 2d 185, 200 fn.7 (citing cases).  However, in this
adversary proceeding, Tate has separately stated a claim for
damages in Count II, so it is not necessary to retain Count I for
the purpose of awarding potential damages.  *See Galope,* 566 Fed.
Appx. at 553 (distinguishing moot claims for declaratory and
injunctive relief from claims for damages pursuant to
§ 362(k)(1)); *Shadduck v. Rodolakis*, 221 B.R. 573, 580 (Bankr. D.
Mass. 1998) (holding similarly).

ambiguous and that Tate is entitled to partial summary judgment decreeing that there was a willful violation of the automatic stay.  Second, the defendants argue that Tate is not entitled to attorney's fees because he failed to mitigate damages.  For the reasons set forth below, I reject the defendants' arguments.

A

DEFENDANTS' ARGUMENT THAT THE LAW WAS AMBIGUOUS

The defendants argue, relying on this court's rulings in *In re Flowers*, 94 B.R. 3 (Bankr. D.D.C. 1988), and *In re Stancil*, 487 B.R. 331 (Bankr. D.D.C. 2013), that there was no willful violation of the automatic stay because state law was uncertain or unsettled regarding the ownership rights of Tate in the Property.[2]  In support of this argument, the defendants merely cite the court's statement in *Flowers*, 94 B.R. at 8, that

---

[2] An injunction ought to give explicit notice of what conduct is outlawed before sanctions are imposed for engaging in the outlawed conduct.  *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1802 (2019).  It follows that in the case of civil contempt, an objective test applies that civil contempt does not lie where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.  *Taggart*, 139 S.Ct. at 1801, 1804.  The same test applies to a proceeding under § 362(k): a violation of the automatic stay is not "willful" when there is fair ground of doubt as to whether the creditor's conduct violated the automatic stay.  The creditor may have intended its act, but with there being fair ground of doubt that the automatic stay applied, the creditor cannot be said to have willfully violated the automatic stay.  A strict liability standard does not apply.  *See In re Univ. Med. Ctr.*, 973 F.2d 1065, 1088-89 (3d Cir. 1992) (a violation of an automatic stay is not "willful" if the law regarding the alleged violation is sufficiently unsettled); *In re Seymoure*, Nos. 07-4960, 07-4967, 2008 WL 1809309, at *3 (Bankr. D.N.J. Mar. 12, 2008) (same).

7

"[a]lthough a debtor's property rights are generally controlled by state law, the fact that such differing results have been reached on the questions now before this Court, in jurisdictions having seemingly similar state laws, would dictate that no contempt be found here," without actually providing any examples of such disparate results.[3]  And in fact, the Bankruptcy Court for the District of Maryland has held under Maryland law, which influenced the District of Columbia's Probate Reform Act of 1980, D.C. Code §§ 20-101 *et seq.* (1981) (*see Richardson v. Green*, 528 A.2d 429, 436-37 (D.C. 1987)), that it was "clear" that the debtor, as heir and beneficiary of his mother's intestacy estate, held an equitable interest in his deceased mother's Property notwithstanding his failure, as the personal representative of her estate, to distribute the Property to himself in probate. *See In re Bunch*, 249 B.R. 667, 670 (Bankr. D.Md. 2000).  More generally, courts applying state law have tended to conclude that when a debtor's interest in the decedent's estate vests prepetition, this interest becomes the property of the estate,

---

[3]  The defendants' *Motion to Dismiss* (Dkt. No. 19) cited case law in support of its argument that some interests (for example, a contingent salary bonus) might be too remote to become property of the bankruptcy estate, but that general principle is insufficient to establish that the relevant District of Columbia laws were ambiguous.

even if probate has not yet occurred.[4]  *See, e.g., Matter of Chenoweth*, 3 F.3d 1111 (7th Cir. 1993) (involving will); *In re Chappel*, 189 B.R. 489 (9th Cir. BAP) (citing *Chenoweth*); *Gan B, LLC v. Sims*, 575 B.R. 375 (N.D. Ill. 2017) (applying *Chenoweth* to intestacy estates); *In re Anderson*, 128 B.R. 850, 851, 856-57 (D.R.I. 1991) (holding that debtor's argument that debtor's interest under will did not belong to the bankruptcy estate was so frivolous as to require the imposition of sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927) ("Few cases exist where a lawyer has even argued that a prepetition testamentary entitlement should be excluded from the bankruptcy estate under [11 U.S.C. §] 541.").

Even without relying on analogous decisions construing other states' laws, I find no ambiguity as to legal basis for the existence of the automatic stay in this case.  D.C. Code § 20-105

---

[4]  A debtor's entitlement to property of a decedent's estate may be insufficiently vested to become property of the estate. *See, e.g., In re Murray*, 147 B.R. 688 (Bankr. E.D.Va. 1992) (under Virginia's law, widow's elective one-third share in husband's decedent's estate *after payment of that estate's debts* was not property of her bankruptcy estate because her entitlement to an elective share would only vest after the satisfaction of other obligations).  A debtor may also have an interest in a decedent's estate under § 541(a)(1) that is too contingent to qualify for some bankruptcy purpose.  *See In re Stoner*, 487 B.R. 410 (Bankr. D.N.J. 2013) (debtor's contingent interest in surplus of father's decedent's estate was property of the bankruptcy estate, but debtor's interest was insufficient to claim a homestead exemption on the proceeds from sale of the father's home).  Such distinguishable cases do not show that the District of Columbia law at issue is ambiguous.

provides:  "All property of a decedent shall be subject to this title and, upon the decedent's death, shall pass directly to the personal representative, who shall hold the *legal* [*i.e.*, not equitable] title *for administration and distribution of the estate*" (emphasis added).  In an early case interpreting § 20-105, the Court of Appeals affirmed and adopted the Superior Court's opinion holding that § 20-105 abolished nonjudicial dispositions of probate estates (*i.e.*, dispositions without the appointment of a personal representative).  *Richardson*, 528 A.2d at 432.  The Superior Court's opinion provides a detailed account of the history leading to the adoption of § 20-105, beginning by noting that "[a]t common law, title to personalty passed to the executors or administrators and title to realty passed by operation of law to the decedent's heirs or devisees, subject to the rights of creditors."  *Id.* (citations omitted).  The opinion further explains that the D.C. City Council rejected the Uniform Probate Code's concept of vesting title directly in (intestate) heirs or (testamentary) legatees subject to a "power over title" given to the personal representative, and instead opted, via § 20-105, to give the personal representative the same *legal title* over real property as the personal representative traditionally had over personal property at common law, in the hope of expediting the administration of probate estates and

creating safeguards for the rights of heirs and creditors.  *Id.*
at 432-434.

    At common law, however, "[t]he title in the executor ... is
a mere legal title for purposes of administration, and the
beneficiary has an inchoate or equitable interest."  6 William J.
Bowe & Douglas H. Parker, *Page on the Law of Wills* § 59.2, at 427
(rev. ed. 2005), *quoted in Reis v. Hazelett Strip-Casting Corp.*,
28 A.3d 442, 478 (Del. Ch. 2011).  Accordingly, § 20-105, in
equating realty and personalty, merely vested the *legal* title
with the personal representative for purposes of administration
of the estate (as § 20-105 states on its face), while the
equitable title, as at common law, remained with the heir or
legatee.  As the court explained in *Bunch*, 249 B.R. at 670:

> [W]hile it is true that the debtor held bare legal
> title to the property in question as personal
> representative, as the defendants acknowledge, it is
> equally clear that he also held an equitable interest
> in his mother's property as the decedent's sole heir
> and sole beneficiary of her estate, which had vested in
> him at the time of her death, well before the debtor
> filed bankruptcy.

*See also U.S. v. Wade*, 992 F. Supp. 6, 11 (D.D.C. 1997) (finding
that heirs had an equitable interest in property that entitled
them to assert standing to challenge an order of abatement
concerning that property notwithstanding that § 20-105 vested
legal title in the personal representative).  Accordingly, as the
explanation in *Richardson* makes clear, the effect of § 20-105 was
not to divest heirs of their equitable interest, but to give

Case 19-10009-SMT   Doc 46   Filed 02/10/20   Entered 02/10/20 14:51:59   Desc Main
Document   Page 12 of 22

personal representatives more control over the administration of

probate estates by vesting in them legal title over all property

of the estate.

In *Douglas v. Lyles,* 841 A.2d 1 (D.C. 2004), the Court of

Appeals further provided guidance as to the effect of § 20-105 on

an heir's interests in the probate estate.  In *Douglas*, the Court

of Appeals reversed the Superior Court's ruling, which had

invalidated a sales contract between a purchaser and heirs of an

intestate decedent, which they entered into before the

appointment of a personal representative and the distribution of

the probate estate.  In so doing the Court of Appeals, *id.* at 5,

reasoned that the contract was enforceable because

> the [heirs] had more than a bare expectancy interest-the
> owner of the property was already deceased when the
> contract was entered into and, thus, there was no chance
> that a change in the laws of intestate succession or
> creation of a will could change the outcome.  If a person
> with a mere expectancy interest [such as a presumptive
> heir during the ancestor's lifetime] can validly assign
> that interest and the assignee can obtain specific
> performance, then it would follow that [the heirs']
> contract here to sell property in which they had a
> specific and quantifiable future interest should be
> enforced.

Thus, under District of Columbia law, as codified in § 20-105 and

interpreted in *Richardson* and *Douglas*, heirs retain the same

equitable or "quantifiable future interest" in a decedent's

estate that they possessed at common law, and this interest is

not defeated by the personal representative's assumption of *legal

title* for *administrative purposes* or by the failure of a

12

personal representative to be appointed or to administer the estate and distribute estate assets.

Subsequent rulings by the Court of Appeals are consistent with this understanding of *Richardson* and *Douglas*. In *In re Estate of McKenney*, 953 A.2d 336, 343 (D.C. 2008), the Court of Appeals affirmed the trial court's ruling voiding an heir's assignment of his interest in his mother's undistributed probate estate to a third party, because the assignee "made material misrepresentations that induced [the assignor] to enter into the agreement." This ruling only makes sense if the heir had an assignable interest in the estate notwithstanding that it had not yet been administered. And in *Ackerman v. Abbott*, 978 A.2d 1250, 1256-57 (D.C. 2009), the Court of Appeals *upheld* a conveyance by the beneficiary of a trust that had been named in a will as the legatee of the testator's interest in property, reasoning that

> while legal title to [the decedent's] undivided one-half interest in the Property was in the personal representative, D.C. Code § 20-105, [the legatee trust] had an enforceable right to require the personal representative to convey the property to it under the terms of the will (subject, to be sure, to any outstanding creditor claims and expenses of administration, which do not appear to be an issue here), and [the legatee trust beneficiary], in turn, had the right to require [the legatee trust] to reconvey the Property to her. Since real property was involved, both rights were specifically enforceable. *Douglas*, *supra*, 841 A.2d at 4. Accordingly, at the time of [the legatee trust beneficiary's] deed to the trusts, both [the legatee trust] and [the legatee trust beneficiary] as beneficiary of the principal had an existing interest in the Property, albeit a theoretically provisional one, that was enforceable in equity. *See id.* at 4-5. In any

13

> realistic sense, a listing of the assets of [the legatee
> trust] and of [the legatee trust beneficiary] at that
> point would reflect in some manner the interests of each
> in the Property, whether termed provisional, contingent,
> inchoate or otherwise.

Thus, one further sees from *Ackerman* that an heir has an interest
in a decedent's estate that vests upon the death of the decedent.

From these rulings of the Court of Appeals, it is clear that
there is no ambiguity as to the effect of § 20-105 on Tate's
interests in the Property: upon Ms. Tate's death, Tate received a
"specific and quantifiable" inchoate or equitable interest in the
Property.  Because it is well-settled that "[t]he bankruptcy
estate is comprised of 'all legal or equitable interests of the
debtor in property as of the commencement of the case,'" and that
§ 541(a)(1) "is deliberately broad in scope," *In re Graves*, 609
F.3d 1153, 1156 (10th Cir. 2010) (*citing United States v. Whiting
Pools, Inc.*, 462 U.S. 198, 204-05 (1983)), it follows that Tate
had an unambiguous prepetition equitable interest that became
property of the bankruptcy estate.

In light of the defendants' failure to provide statutory or
precedential support for their claim that D.C. law was
"ambiguous" as to Tate's interest, it is possible that the
defendants meant to argue that their counsel had a good faith but
mistaken belief about District of Columbia law, and that this
mistaken belief reflected that the law was ambiguous.  This
argument fails.  Just as good faith is not a defense to civil

14

contempt (*see McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949)), good faith is not a defense to a § 362(k) claim. *Stancil*, 487 B.R. at 343. "Moreover, the reliance on the erroneous advice of counsel does not establish that the law was unsettled as to whether an automatic stay had arisen." *Id.* at 344.

The defendants' *Motion to Dismiss* cited *Richardson* and *Douglas*, which, as I have concluded above, plainly hold that an heir is vested with the same equitable interest in property as the heir received at common law. Accordingly, even if a good-faith exception were applicable to the defendants' proceeding with the foreclosure sale, that exception could not extend to any actions taken after the defendants became aware, or should have become aware, of *Richardson* and *Douglas* while conducting research for the *Motion to Dismiss*.[5]   *See In re Grinspan*, 597 B.R. 725,

---

[5]   The defendants' *Motion to Dismiss* relied on *Richardson* and *Douglas* for propositions that are squarely contradicted by those cases, namely: (1) that the debtor had only an expectancy interest in the Property (contradicted by *Douglas*) and (2) that the personal representative's legal title foreclosed any interest of the debtor as an heir (contradicted by *Douglas* and by *Richardson* clearly characterizing § 20-105 as giving the personal representative *legal* title for administrative ease). Moreover, the defendants, in their response to Tate's opposition to their *Motion to Dismiss*, attempted to distinguish *Bunch*, upon which Tate relied in his opposition to the *Motion to Dismiss*, on the basis that it was applying Maryland law, even though *Richardson* explicitly notes that § 20-105 was based on the Maryland law at issue in *Bunch*, and even cites the legislative history of the Maryland law.

744-45 (Bankr. E.D.N.Y. 2019) (creditor who initially violated
automatic stay without actual notice willfully violated stay upon
taking further actions after receiving actual notice of the
stay); *In re Warren*, 532 B.R. 655, 662 (Bankr. D.S.C. 2015)
(holding similarly).

In summary: District of Columbia law is not ambiguous as to
the existence of Tate's interest in the Property at the
commencement of the case, and therefore the law is not ambiguous
as to the existence of the automatic stay when the defendants
proceeded with the foreclosure sale.  There is no genuine dispute
as to the material facts, and as a matter of law they establish
that under unambiguous District of Columbia law Tate plainly had
an interest in the Property, that such interest was plainly
protected by the automatic stay, that the defendants were
informed of Tate's interest in the Property and of the
commencement of the bankruptcy case, and that the defendants
nevertheless proceeded to sell the Property at a foreclosure
sale, thus violating the automatic stay.  Therefore, I reject the
defendants' argument that their violation of the stay was not
willful.

Tate's opposition to the defendants' *Motion for Summary
Judgment* itself sought partial summary judgment as to the issue
of willfulness.  The defendants' reply seems to have overlooked
that Tate moved for summary judgment.  However, in replying to

that opposition the defendants stated: "The remaining question
is: was the law sufficiently clear to tell them that in advance,
thus making their action a willful violation of the Automatic
Stay?"  They have briefed that question and I have concluded that
the law was sufficiently clear to tell the defendants that a
foreclosure sale would violate the automatic stay.  Accordingly,
it is appropriate to grant partial summary judgment ruling that
there was a willful violation of the automatic stay, such that
Tate is entitled under § 362(k)(1) to recover actual damages,
including costs and attorney's fees, and, if appropriate,
punitive damages.

B

DEFENDANTS' ARGUMENT THAT DEBTOR DID NOT MITIGATE DAMAGES

The defendants' *Motion for Summary Judgment* further requests
that the court deny Tate's request for fees because Tate
"breached his duty to mitigate damages" and "has raced to the
courthouse steps and has churned this case repeatedly – an
approach that makes no economic or practical sense whatsoever."

Strictly speaking, "[n]othing in the Bankruptcy Code or
Federal Rules of Bankruptcy Procedure suggests that such a duty
[to mitigate] exists."  *In re Rijos*, 263 B.R. 382, 390 (1st Cir.
B.A.P. 2001).  Nevertheless, the defendants' objection to the
potential use of § 362(k) to generate improper fees is well-
taken, and accordingly, courts have developed a "sound judicial

17

policy that profit-making from violations of the automatic stay
is inherently improper." *In re Silk*, 549 B.R. 297, 303 (Bankr.
D. Mass. 2016)(*quoting In re Docherty*, No. 15-14124, 2016 WL
675835, at *9 (Bankr. N.D. Ohio Feb. 18, 2016)).  *See also In re
Genesys, Inc.*, 273 B.R. 290, 296 (Bankr. D.D.C. 2001) (finding
that a debtor has a duty to mitigate damages and fees should not
be "completely overblown").  Nevertheless, for three reasons,
summary judgment is inappropriate regarding the defendants'
argument that Tate has failed to mitigate damages (and has thus
forfeited any entitlement to attorney's fees).

*First*, "failure to mitigate is an affirmative defense and
the party asserting it bears the burden of demonstrating the
opposing party's failure to act reasonably under the
circumstances." *Tri County Industries, Inc. v. District of
Columbia*, 200 F.3d 836, 840 (D.C. Cir. 2000).  On the evidence
before the court, it is not clear that Tate's actions in filing
the adversary complaint should be viewed as unnecessarily
"rac[ing] to the courthouse steps" in an attempt to profit from
the stay violation rather than as reasonable under the
circumstances: not only do debtors not have an obligation to
notify creditors before seeking relief under § 362(k), *see Silk*,
549 B.R. at 303, but the defendants admit that they proceeded
with the foreclosure sale despite notice of the pendency of the
case and of Tate's alleged interest in the Property.  Nor is it

18

clear why Tate's opposition to the *Motion to Dismiss*, his second

amended complaint (filed in response to this court's *Memorandum*

*Decision And Order*), or his opposition to the *Motion for Summary*

*Judgment* should be interpreted as "churn[ing] this case

repeatedly."  With regard to the defendants' *Motion to Dismiss* in

particular, I find the words of the court in *In re Voll*, 512 B.R.

132, 142 (Bankr. N.D.N.Y. 2014) to be applicable:

> the [creditor] elected to oppose Debtors' motion on the
> basis that no violation of the automatic stay occurred,
> thereby requiring Debtors' counsel to prove the
> violation.  It did not, in contrast, acknowledge the
> violation and limit its arguments to issues of mitigation
> of damages.  Had it done so, the court would take more
> seriously the contention that a mere phone call was all
> that was reasonably necessary to resolve the matter.

Accordingly, the defendants have not shown that Tate's actions

were unreasonable under the circumstances, and have not satisfied

their burden as to mitigation of damages such as to be entitled

to summary judgment on that issue.

*Second*, even if some of Tate's actions were not consistent

with his duty to mitigate damages, it is unclear that this serves

as a basis for precluding an award of attorney's fees outright.

Moreover, even if in some cases an outright disallowance of all

fees would be appropriate, such should not be the case here:

"creditors may not deny that a violation of the stay was willful

then, after forcing the debtor to litigate the matter, baldly

claim that debtor-counsel's fees were unreasonable or

unnecessary."  *Voll*, 512 B.R. at 142 (*citing Duby v. United*

19

*States (In re Duby)*, 451 B.R. 664, 677 (1st Cir. B.A.P. 2011); *In re Robinson*, 228 B.R. 75, 86-87 (Bankr. E.D.N.Y. 1998)).

*Third*, while the defendants' concern about abuse of § 362(k) is valid, any such abuse does not warrant an outright denial of fees: § 362(k) itself constrains counsel's ability to collect an inflated fee, making outright disallowance unnecessary.  Under § 362(k), a plaintiff "can recover as actual damages only those attorney fees related to enforcing the automatic stay and remedying the stay violation . . . ." *Sternberg v. Johnston*, 595 F.3d 937, 940 (9th Cir. 2010).  The term "actual damages" is generally understood to limit fee awards under § 362(k) to those fees generated by those activities of the debtor's counsel that are "reasonable and necessary." *In re Prusan*, 495 B.R. 203, 208 (Bankr. E.D.N.Y. 2010) (citing *In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998)).  Consequently, when a court rules that the debtor is entitled to recover attorney's fees under § 362(k), the court retains the authority to review the reasonableness of the fees requested, including their necessity. *See In re Collum*, 604 B.R. 61, 70 (Bankr. M.D. Ala. 2019) ("courts have broad discretion to determine the appropriate amount" of attorney's fees awarded pursuant to § 362(k).") (*citing In re Smith*, 296 B.R. 46, 62 (Bankr. M.D. Ala. 2002)).  The same principles hold true in this adversary proceeding.  Because the defendants have not established that Tate has failed to mitigate damages to such

20

an extent as to foreclose an award of attorney's fees, Tate has a right to present evidence to the court as to the appropriate amount of attorney's fees, notwithstanding that the fee award may ultimately be minimal and may be reduced to the extent of fees incurred by reason of a failure to mitigate such damage.

Accordingly, the court will deny the *Motion for Summary Judgment* as to Count II, and the court will hold a scheduling conference for a trial on the amount of damages to which Tate is entitled pursuant to § 362(k).

IV

For the foregoing reasons, it is

ORDERED that the defendants' *Motion for Summary Judgment* (Dkt. No. 36) is granted in part, and Count I, seeking declaratory relief is dismissed on the grounds of mootness.  It is further

ORDERED that the part of Tate's motion for summary judgment (Dkt. No. 37) seeking a declaratory judgment under Count I is DENIED.  It is further

ORDERED that the defendants' *Motion for Summary Judgment* (Dkt. No. 36) is otherwise DENIED.  It is further

ORDERED that Tate's motion for summary judgment (Dkt. No.37) is granted in part, as follows: the court decrees that within the meaning of 11 U.S.C. § 362(k) the defendants willfully violated the automatic stay of 11 U.S.C. § 362(a) such that Tate is

21

entitled to recover actual damages, including costs and

attorney's fees, and, if appropriate, punitive damages.  It is

further

    ORDERED that on March 3, 2020, at 10:30 a.m., the court will

hold a status conference.

                            [Signed and dated above.]

Copies to: Recipients of e-notifications of filings;

EJF Real Estate Services
David Hanh
Clarence Hutton
1428 U Street, NW
2nd Floor
Washington, DC 20009

Alex Cooper Auctioneers Inc.
4910 Massachusetts Ave., NW
#100
Washington, DC 20016